UNITED STATES

v.

**Stephen M. SAMUEL, Seaman Apprentice, U.S. Coast Guard.**

CGCM 9978.

Docket No. 864.

U.S. Coast Guard Court of Military Review.

12 Sept. 1984.

Trial Counsel: LT. Don M. Wryle, USCGR.

Defense Counsel: LT E.W. Perez-Rodriguez, USCGR.

Appellate Defense Counsel: LT Keith M. Harrison, USCGR.

Appellate Government Counsel: LT Christena G. Green, USCGR.

## DECISION

CEDARBURG, Chief Judge:

Appellant pleaded guilty, pursuant to a pre-trial agreement, to unlawful entry of the seized vessel M/V Bonita with intent to commit larceny, larceny of marijuana of a value in excess of $100, possession, with intent to distribute, of 30 pounds of marijuana, and wrongful distribution of 4 ounces of marijuana to a Petty Officer 2nd Class in the U.S. Coast Guard in violation of Articles 130, 121 and 134, UCMJ, 10 U.S.C. §§ 930, 921, 934. He was found guilty in accordance with his pleas by a military judge sitting alone who sentenced him to a bad conduct discharge, confinement at hard labor for 22 months, total forfeitures for a period of 22 months and reduction to pay grade E-1. Since the pre-trial agreement limited the sentence which the convening authority could approve to a dishonorable discharge, confinement at hard labor for five years, forfeiture of all pay and allowances and reduction to pay grade E-1, the sentence ceiling of the pre-trial agreement was not triggered. Despite this fact, the convening authority approved only so much of the sentence as provided for a bad conduct discharge, confinement at hard labor for 14 months, total forfeitures for a period of 14 months and reduction to pay grade E-1.

Appellant asserts a single assignment of error as follows:

SEAMAN APPRENTICE SAMUEL WAS DENIED INDIVIDUALIZED SENTENCE CONSIDERATION BECAUSE OF THE CONVENING AUTHORITY'S PREDETERMINED AND INFLEXIBLE IDEAS OF AN APPROPRIATE SENTENCE IN THIS CASE

We reject appellant's contention of error and affirm.

The military judge, after rendition of sentence, expressed his belief that the sentence was appropriate for the offenses appellant had committed and for the Coast Guard. He was obviously impressed with the large quantity and quality of the character evidence which was adduced on behalf of appellant. He recommended to the convening authority that "... he take the time personally to read Defense Exhibits B through, I believe its JJ, the last defense exhibit, which will serve [to give] ... some sort of personal taste for the individual...." He further recommended that the convening authority review reports of appellant's post-trial progress. Finally, he recommended that if appellant made post-trial progress, the convening authority consider suspending a portion of the confinement and forfeitures and the bad conduct discharge.

A petition for clemency was submitted by appellant to the convening authority which included letters from the trial counsel who had also prosecuted 2 companion general courts-martial, reciting that appellant had testified on behalf of the prosecution and his testimony was instrumental in obtaining convictions. It also included a personal appeal from appellant expressing remorse and asking that the severity of the sentence be moderated. A progress report from the Brig Counselor at the Norfolk Naval Station brig indicated appellant had adjusted well to confinement and had received work and training evaluation reports ranging from average to outstanding with improving conduct, attitude and performance.

The staff legal officer recommended approval of the sentence as adjudged but suspension of the bad conduct discharge, confinement in excess of 9 months and 22 days and forfeitures beyond the period of confinement. The convening authority disagreed with the action on the sentence recommended by his staff legal officer and, pursuant to paragraph 85c Manual for Courts-Martial 1969 (Rev.Ed.), stated his reasons for not following the recommendation.

Appellant quotes a portion of the convening authority's letter explicating his reasons for disagreeing with the recommendation of his staff judge advocate as follows: [Samuel's]

"acts are simply not acceptable for members of the United States Coast Guard, regardless of the substantial otherwise good character evidence adduced in this case.... Members who wrongfully enter seized vessels, steal therefrom, and possess substantial quantities of marijuana with intent to distribute (and do in fact distribute) it to other members of the Coast Guard, simply cannot be retained in the service."

Citing *United States v. Lacey,* 23 U.S.C. M.A. 334, 49 C.M.R. 738 (1975), appellant argues that the above language evidences an inelastic attitude by the convening authority which deprived him of an individualized sentencing consideration.

We conclude that the statement of reasons for the action taken by the convening authority in its entirety does not support a conclusion that the convening authority was applying a preconceived, fixed attitude towards a category of offense applicable to all members of the Coast Guard without regard to the facts of an individual case. Significantly, and in accord with the recommendation of the military judge, also urged on him by appellant's counsel, the convening authority stated that he "... personally read every page and exhibit of the record of trial in this case, and gave them careful consideration. As matters of my discretionary judgment, the action taken represents a careful and considered assessment of all relevant facts." In context, the portion of the convening authority's letter quoted by appellant which referred to "members" was a particularization of the unique circumstances of the offenses in appellant's case.

In his explanation the convening authority disclosed that he had given consideration to the fact that the offenses of which appellant was found guilty were very serious. That conclusion is indisputable. As expressed by the convening authority, the

acts by appellant of unlawful entry onto a vessel seized by the Coast Guard for drug violations and stealing a large quantity of marijuana with intent to distribute the marijuana and in fact distributing marijuana were clearly unacceptable conduct for members of the Coast Guard. A fair reading of the entire statement of the convening authority's reasons does not evidence a preconceived and inelastic attitude towards appellant's sentence. Rather, it discloses careful consideration of all relevant factors, including the nature and severity of the offenses, the substantial good character evidence appellant was able to amass, and the deterrent effect which the quantum of punishment approved would have upon appellant and other members of the Coast Guard. The convening authority's "considered assessment" of these factors sustains his conclusion that appellant's retention in the Coast Guard was not justified. We are persuaded that the convening authority, rather than evincing an inelastic sentencing attitude did precisely what he was bound to do. He read the entire record of trial, every page and exhibit; he considered the recommendations of the military judge and his staff legal officer; he took into account the appellant's petition for clemency; and, he weighed the gravity of the offenses along with the evidence in extenuation and mitigation. He then reduced the sentence to confinement and forfeitures substantially. The sentence approved was appropriate for the offenses and the offender.

Accordingly, the findings and sentence as approved on review below are affirmed.

Judges HOLLAND and BRIDGMAN concur.

Judge BURGESS did not participate in the decision in this case.

Judge REINING (concurring in the result):

The case before this court is an example of a dilemma facing convening authorities. Paragraph 85c, Manual for Courts-Martial, 1969, and *United States v. Keller,* 1 M.J.

159 (C.M.A.1978), require a convening authority to forward a statement that explains why the convening authority took an action that differed from the recommendation of the convening authority's staff judge advocate. In many cases, the convening authority's action will be based on a simple disagreement as to what is appropriate in a given case. A convening authority will have a different gut feeling or make a different judgment call than the staff judge advocate. In many cases, a convening authority will simply believe that the offenses in a particular case are serious and that the action recommended by the staff judge advocate is either inappropriate or would result in insufficient punishment for the particular case. The difficulty facing the convening authority is how to state this, without falling into traps that have been established by the case law. The Court of Military Appeals in *United States v. Harris,* 10 M.J. 276 (C.M.A.1981), has held that the simple statement "in view of the seriousness of the offenses" is inadequate to satisfy the explanation required by *Keller.* Further, the convening authority must also be careful that he does not base his reasoning upon an inelastic view of the appropriate punishment for a particular crime.

In the case before this court, the convening authority conducted a thorough review of the record. He modified the sentence adjudged but did not go as far as the recommendation of the staff judge advocate, because he felt that separation from the service was the appropriate sentence, notwithstanding the extenuation and mitigating circumstances that had been presented.

By trying to avoid the *Harris* trap the convening authority may have fallen into the trap established in *United States v. Lacey,* 23 U.S.C. 334, 49 C.M.R. 738 (C.M.A.1975). The convening authority expressed the view that anyone who commits the particular crimes committed by the appellant should be separated from the service. The language used by the convening authority suggests that the convening au-

thority had an inelastic attitude on the appropriate punishment for individuals who commit these specific crimes.

The Court of Military Appeals in *Lacey* held that an accused is entitled to a careful and individualized review of the sentence by the convening authority. In cases where the convening authority has adopted a fixed policy or any inelastic attitude toward the exercise of this discretion in affirming, modifying, or suspending a sentence, the Court will find that the convening authority has not complied with the Code. In the *Lacey* case, the convening authority stated that:

> "[L]arceny, a crime involving moral turpitude, is so prejudicial to good order and discipline that the risk of recurrence strongly dictates removal from the U.S. Navy immediately. Accordingly, the bad conduct discharge is approved without suspension."

In this case, the convening authority stated that

> "... The accused's acts are simply not acceptable for members of the United States Coast Guard, regardless of the substantial otherwise good character evidence adduced in this case.
>
> Members who wrongfully enter seized vessels, steal therefrom, and possess substantial quantities of marijuana with intent to distribute (and do in fact distribute) it to other members in the Coast Guard, simply cannot be retained in the service."

At issue is whether by making this statement the convening authority has expressed an inelastic view towards the type of sentence that is appropriate to these offenses. On its face, the language used by the convening authority in this case is very close to the language used by the convening authority in *Lacey*.

It has been argued that *Lacey* is inapplicable to this case, since *Lacey* dealt with the fairly simple, generic offense of larceny and this case involved a very limited and unique set of offenses. However, the offenses committed by the appellant are not unknown in today's Coast Guard. There are in fact six cases pending or recently decided by this court and eight cases before the Chief Counsel for review under Article 69, 10 U.S.C. § 869, in which the offenses involve the stealing or attempt to steal contraband from seized vessels for subsequent sale or distribution. The language used by the convening authority in *Lacey* and this case is too similar to be distinguished simply because one case involved a complicated but not unique set of circumstances.

However, I am reluctant to dissent from the principal decision in this case, since I agree that the convening authority did in fact, conduct a personalized review of appellant's case, notwithstanding his expression of strong feeling on the appropriate sentence for the offenses. I agree with the convening authority that the offenses committed by the appellant were very serious and the sentence approved by the convening authority is appropriate for these offenses, notwithstanding the extensive evidence presented in extenuation and mitigation.

I do not believe that a convening authority should be held to a unrealistic standard of penmanship, under which the unfortunate choice of a few words results in the need for this court to refer a record to another convening authority for action.

Since there is nothing in the record that indicates that the convening authority had any preconceived attitude toward the appropriate sentence for this case, I believe it is reasonable to take the position that the convening authority's attitude on the appropriate sentence for these offenses resulted from his review of the record in this case. Therefore, I concur in the result reached in the principal decision.

However, I am concerned that the strong statement used by the convening authority in this case could arguably lead to the application of *Lacey* in other cases involving these offenses that are acted upon by the convening authority subsequent to the date of the convening authority's action in this case.